<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ———————————————————— : | | |
| PEOPLESTRATEGY, INC., *et al.*, : | | |
| : | | |
| Plaintiffs, : | | |
| : | | |
| v. : | | Case No. 3:20-cv-02640-BRM-DEA |
| : | | |
| LIVELY EMPLOYER SERVICES, INC., : | | |
| *et al.*, : | | |
| : | | |
| Defendants. : | | **OPINION** |
| ————————————————————: | | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion for Reconsideration (ECF No. 89) filed by Defendants Lively Employer Services, Inc. ("Lively"), Timothy Padva ("Padva"), Michael Gorker ("Gorker"), Michael Wiggins ("Wiggins"), William Gibson ("Gibson"), and John Faherty ("Faherty") (collectively, "Defendants"), pursuant to Local Civil Rule 7.1 seeking reconsideration of the August 28, 2020 Order and Opinion (ECF Nos. 76 and 77), which granted Plaintiffs Peoplestrategy, Inc. ("Peoplestrategy") and Checkpoint HR, LLC. ("Checkpoint") (collectively, "Plaintiffs") a Preliminary Injunction. Plaintiffs opposed the Motion. (ECF No. 94.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, the Motion is **DENIED**.

## I.   BACKGROUND

The underlying facts are set forth at length in the Court's August 28, 2020 Opinion (ECF No. 76), from which Defendants seek reconsideration. In the interest of judicial economy, the Court refers the parties to that Opinion for a full recitation of the factual and procedural background of this dispute.

## II.   LEGAL STANDARD

While not expressly authorized by the Federal Rules of Civil Procedure, motions for reconsideration are proper pursuant to this District's Local Civil Rule 7.1(i) if there are "matters or controlling decisions which counsel believes the Judge . . . has overlooked." L.Civ.R. 7.1(i); *Dunn v. Reed Grp., Inc.*, No. 08-1632, 2010 WL 174861, at *1 (D.N.J. Jan 13, 2010).[1] The comments to that Rule make clear, however, that "reconsideration is an extraordinary remedy that is granted 'very sparingly.'" L.Civ.R. 7.1(i) cmt. 6(d) (quoting *Brackett v. Ashcroft*, No. 03-3988, 2003 WL 22303078, *2 (D.N.J. Oct. 7, 2003)). In that regard, the Third Circuit has held the scope of a motion for reconsideration is "extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* Accordingly, an order or judgment may only be altered or amended if the party seeking

---

[1] Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure. *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999). Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), or as a motion for relief from judgment or order under Federal Rule of Civil Procedure 60(b). *Id.* For the same reasons that Defendants' motion is denied on the merits under the Local Rule, it is denied under the Federal Rules. *See Holsworth v. Berg*, 322 F. App'x 143, (3d Cir. 2009) (construing motion for reconsideration as the functional equivalent of a Rule 59(e) motion to alter or amend a judgment which requires either "(1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice.").

reconsideration shows at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014). The Third Circuit has defined "new evidence" for purposes of a motion for reconsideration:

> [N]ew evidence, for reconsideration purposes, does not refer to evidence that a party submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available. Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration.

*Blystone*, 664 F.3d at 415-16 (citations omitted). Additionally, a court commits clear error of law "only if the record cannot support the findings that led to the ruling." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F. 3d 591, 603-04 (3d Cir. 2008)). "Thus, a party must . . . demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." *Id.*

In short, "[m]ere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs.*, 2010 WL 3257992, at *6 (quoting *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. 2001)); *see also United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]."); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 163 (D.N.J. 1988); *Schiano v. MBNA Corp.*, No. 05-1771, 2006 WL 3831225, at *2 (D.N.J. Dec. 28,

2006) ("Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, . . . and should be dealt with through the normal appellate process . . . .") (citations omitted).

## III.   DECISION

Defendants seek reconsideration of paragraph 4 of the Court's August 28, 2020 Order granting a preliminary injunction in favor of Plaintiffs. (ECF No. 89 at 1.) Paragraph 4 requires Defendants to withdraw within five days from any current or pending business relationship with six particular clients and any other Restricted Clients[2]. (ECF No. 77 at 2.) Defendants contend the Court: (1) overlooked the controlling law regarding Plaintiffs' obligation to prove they suffered irreparable injury with respect to eight of Plaintiffs' former clients now being served by Lively (ECF No. 89-1 at 5); (2) erred in finding Plaintiffs have demonstrated irreparable injury (*id.* at 9-10); and (3) did not fully consider the effects of the preliminary injunction on the eight clients and their employees (*id.* at 12). The Court disagrees.

### A.  The Court Did Not Overlook the Controlling Law Regarding Irreparable Injury

Defendants point to the established case law that a plaintiff could not have suffered any irreparable injury if its losses are calculable and can be adequately compensated by money damages. (*Id.* at 7-9.) But the Court did not overlook the controlling law regarding Plaintiffs' obligation to prove irreparable injury. The Court considered the case law that "[i]rreparable harm must be of a peculiar nature, so that compensation in money alone cannot atone for it." (ECF No. 76 at 17 (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (internal quotations and citations omitted)).) As for the irreparable injury associated with

---

[2] "Restricted Clients" mean any current client of Plaintiffs or any person or entity that has been a client of Plaintiffs at any time since May 2, 2017.

trade secret misappropriation, the Court noted "the disclosures of trade secrets may establish immediate irreparable harm" (*id.* at 16 (citing *Neo Gen Screening, Inc. v. TeleChem Intern., Inc.*, 69 F. App'x 550, 554-55 (3d Cir. 2003))), and "a loss of trade secrets was an irreparable harm that could not be measured in money 'because a trade secret once lost is, of course, lost forever'" (*id.* (citing *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984))). Accordingly, the Court agreed with Plaintiffs' argument that "money damages are not sufficient here because of the pervasive nature of Defendants' interference with the clients." (*Id.* at 17 (citing ECF No. 59 at 65).)

Defendants also cite a number of cases purporting to show the loss of clients or revenue does not warrant an injunction. (ECF No. 89-1 at 7-9.) However, the Court already considered two of these cases in the August 28, 2020 Opinion (ECF No. 76 at 17 (citing *Morton v. Beyer*, 822 F.2d 364 (3d Cir. 1987)), 19 (citing *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100 (3d Cir. 1988))), and therefore need not consider them again here. The other cases cited by Defendants are not applicable here, because none of them involves the misappropriation of a protectible trade secret. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802-03 (3d Cir. 1989) (concluding the plaintiff has not shown irreparable injury because there are no "financial statements or projections in the record indicating that [the plaintiff] will be forced into bankruptcy" due the termination of its contract with the defendant in the absence of a preliminary injunction); *Mettler-Toledo, Inc. v. Acker*, 908 F. Supp. 240, 248 (M.D. Pa 1995) (concluding the plaintiff has not shown irreparable injury because the plaintiff's possible damages due to loss of customers without a preliminary injunction during the pendency of the litigation "can be readily ascertained by reviewing the customer lists and receivables"); *American Air Filter Co. v. McNichol*, 361 F. Supp. 908, 912 (E.D. Pa 1973) (concluding the plaintiff has not shown

irreparable injury because the plaintiff fails to prove it "divulged to [the defendant] trade secrets and confidential information," and the plaintiff's losses of the particular sales are "are easily measurable" and have "little impact beyond the loss of the sale itself"); *Apollo Technologies Corp. v. Centrosphere Industrial Corp.*, 805 F. Supp. 1157, 1208-09 (D.N.J. 1992) (concluding the plaintiff has not shown irreparable injury because the plaintiff's alleged loss of contract is speculative and the information the plaintiff sought protect is not proven to be a trade secret); *Ortho Biotech Prods., L.P. v. Amgen, Inc.*, No. 05-4850, 2006 U.S. Dist. LEXIS 85331 at *25 (D.N.J. Nov. 21, 2006) (concluding the plaintiff has not shown irreparable injury because "all of [the plaintiff's] alleged injuries flow from this alleged decrease in profits"). Defendants' allegedly continued use of Plaintiffs' trade secret without a preliminary injunction was an essential reason that this Court found Plaintiffs demonstrated irreparable injury. (ECF No. 76 at 17.) Therefore, the Court need not consider these cases.

**B.  The Court Did Not Clearly Err in Finding Plaintiffs' Irreparable Injury**

Defendants contend Plaintiffs have not demonstrated irreparable injury for the following reasons. First, the only ensuing damages of Plaintiffs without the preliminary injunction would be purely financial and calculable. (ECF No. 89-1 at 9.) Plaintiffs only suffered revenue reductions because of losing the eight clients to Lively. (*Id.*) Such a revenue loss is calculable based on Plaintiffs' own records showing their prior dealings with these clients. (*Id.* at 9-10.)  Second, the eight clients represent only a small proportion of Plaintiffs' business, which remains as a going concern. (*Id.* at 10.) Third, any potential injury to Plaintiffs' reputation or goodwill has been consummated after the eight clients left Plaintiffs. (*Id.*) The preliminary injunction can neither undo a consummated injury nor prevent similar future injury. (*Id.*) In sum, Defendants argue

Plaintiffs fail to meet the criteria of irreparable injury in the preliminary injunction injury. (*Id.* at 6.) The Court disagrees.

### 1. Revenue Loss Cannot Account for Other Incalculable Injuries

Defendants' argument that Plaintiffs only suffered revenue loss is unfounded. The Court found Plaintiffs (1) lost any privacy with respect to its proprietary information of client lists and marketing materials, which Defendants had been using to grow their business, (2) would suffer further reputational injuries had Defendants not been enjoined from violating their nonsolicitation agreements, and (3) lost any goodwill that Plaintiffs may have garnered with their now former clients. (ECF No. 76 at 17.) The Court also noted the Third Circuit rule that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." (*Id.* (citing *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992)).) This led to the Court's finding that Plaintiffs have demonstrated irreparable injury. (ECF No. 76 at 17.)

The Court's finding is supported by the controlling case law recognizing the various sources of irreparable injury associated with trade secret misappropriation. "Damages will not be an adequate remedy when the competitor has obtained the secrets. The cat is out of the bag and there is no way of knowing to what extent their use has caused damage or loss." *Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*, 530 A.2d 31, 33 (N.J. Super. Ct. 1987).[3] In particular, the right to exclude is at the center of the property rights in a trade secret. *Ruckelshaus v. Monsanto*

---

[3] *See also*, *e.g.*, *HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 174 (3d Cir. 2015) (finding irreparable harm when an employee "transferred his loyalties" to a new employer and therefore would be willing to disclose damaging information or allow his knowledge to influence his actions); *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 732 (3d Cir. 2009) (noting "disclosure of confidential information or trade secrets may constitute irreparable harm"); *Trico Equip., Inc. v. Manor*, No. 08-5561, 2009 WL 1687391, at *9 (D.N.J. June 15, 2009) (holding that plaintiff established irreparable harm where defendant and new employer would continue to benefit from the confidential information he learned working for plaintiff).

*Co.*, 467 U.S. 986, 1011 (1984). As a result, "the damages arising from the misappropriation of trade secrets is irreparable and impossible to calculate." *Dayton Superior Corp. v. Yan*, 2013 U.S. Dist. LEXIS 55922, at *29 (S.D. Ohio April 18, 2013). The misappropriation of a trade secret may lead to a loss of goodwill, which may impact a business in many subtle ways; this makes the resultant injury impossible to calculate and therefore irreparable. *Laidlaw, Inc. v. Student Transp. of Am.*, 20 F. Supp. 2d 727, 767 (D.N.J. 1998). In addition, the diversion of a company's customers may constitute irreparable harm, the extent of which "cannot be readily ascertained, and as such, does not lend itself to a straightforward calculation of money damages." *ADP, LLC v. Pittman*, No. 19-16237, 2019 U.S. Dist. LEXIS 181274 at *52-53 (D.N.J. Sept. 11, 1998). Therefore, "[c]ourts in the United States Court of Appeals for the Third Circuit and the United States District Court for the District of New Jersey have had no difficulty in finding that the loss of business opportunities and goodwill constitutes irreparable harm for purposes of issuing a preliminary injunction." *Id.* at *52. "Likewise, New Jersey courts recognize that the diversion of a company's customers may constitute irreparable harm." *Id.*

In sum, even if Defendants establish Plaintiffs' revenue loss can be calculated with reasonable certainty, it does not undermine the Court's finding of incalculable and irreparable injury stemming from the loss of reputation, trade, and goodwill.

### 2. Even A Small Injury Can Be Irreparable

Defendants claim Peoplestrategy remains in business after losing the eight clients, which represent only a small portion of its business. (ECF No. 89-1 at 10.) But this is irrelevant in determining irreparable injury in light of the relevant case law.

"The Third Circuit has 'rejected the view that a monetizable injury which is small in relation to a plaintiff's total assets cannot be irreparable.'" *Morgan Stanley Smith Barney LLC v.*

*Walker*, 2018 U.S. Dist. LEXIS 47760 at \*12 (E.D. Pa. March 19, 2018) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 206 (3d Cir. 1990)). Even if only "a relatively small portion of their total business activity" is affected by the trade secret misappropriation, the disclosure of strategic information can cause irreparable harm that warrants issuing a preliminary injunction. *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1192 (5th Cir. 1984). "It is not the number of trade secrets taken that determines whether the threat of irreparable harm exists. The fact that a single trade secret may be disclosed is enough." *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503 (5th Cir. 1982).

The cases Defendants cite do not dictate a different result. In *Mettler-Toledo, Inc. v. Acker*, 908 F. Supp. 240 (M.D. Pa 1995)—the only case that involves the situation where the threatened injuries of a plaintiff without a preliminary injunction constitute only an insubstantial portion of the plaintiff's total revenue—the court considered the situation only in balancing the equities between the parties, but not for the irreparable injury inquiry. *Id.* at 249. This is consistent with many other courts that consider it only in the balancing of equities analysis. *See, e.g., Yellowstone Landscape v. Fuentes*, 2020 U.S. Dist. LEXIS 140422 at \*52 (S.D. Tex. Aug. 6, 2020); *Stoneworks, Inc. v. Empire Marble and Granite, Inc.*, 1998 U.S. Dist. LEXIS 21762 \*17 (S.D. Fla. Nov. 19, 1998); *AK Steel Corp. v. Colton*, 2001 U.S. Dist. LEXIS 20314 \*15 (E.D. Mich. Nov. 30, 2001); *M-I LLC v. Argus Green LLC*, 2010 U.S. Dist. LEXIS 160044 \*12-13 (E.D. Tex. July 13, 2010).

Therefore, even if only a small portion of Peoplestrategy's business is affected by Defendants' actions, the resultant injury can be irreparable.

### 3.  Plaintiffs May Suffer Future Irreparable Injury Without an Injunction

Contrary to Defendants' contention, the preliminary injunction is necessary to protect Plaintiffs from future loss of reputation, trade, or goodwill, which constitutes irreparable injury.

First, as the Court noted, "without an injunction, Defendants will continue to violate their nonsolicitation agreements, further damaging Plaintiffs' reputation among its customers, its employees, and in the industry in general." (ECF No. 76 at 17.) If an accused infringer continues to use an allegedly misappropriated trade secret, it may "give rise to the public perception that [the plaintiff] [is] unable to protect its proprietary trade secrets." *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 265 (3d Cir. 2000). "Such injuries to reputation are difficult to calculate, and thus money damages are an inadequate remedy." *Id.* Therefore, without the preliminary injunction, Plaintiffs would suffer future irreparable reputational injury, due to the public perception of Plaintiffs' inability to protect their own trade secret.

Second, because of "the pervasive nature of Defendants' interference with the clients" (ECF No. 76 at 17), the injury to Plaintiffs' client relationship and goodwill is unlikely to end upon severance of Plaintiffs' relationship with their former clients. When a defendant is accused of misappropriating a plaintiff's trade secret and using it to divert business from the plaintiff, allowing the defendant to retain relationship with the plaintiff's former clients would subject the plaintiff to a continued erosion of goodwill and business opportunities. *Saturn Wireless Consulting, LLC v. Aversa*, No. 17-1637, 2017 U.S. Dist. LEXIS 65371 at *50-51 (D.N.J. April 26, 2017); *Menasha Packaging Co., LLC v. Pratt Indus.*, No. 17-0075, 2017 U.S. Dist. LEXIS 22318 at *27 (D.N.J. Feb. 15, 2017). Therefore, the preliminary injunction can prevent Plaintiffs from suffering future loss of trade or goodwill.

In sum, on the issue of irreparable injury, Defendants do not base the Motion on a change in the law, newly discovered evidence, or clear legal or factual error by the Court. Instead,

Defendants merely disagree with the Court's decision, and therefore fail to meet the standards for granting a Motion for Reconsideration.

### C. The Court Grants Defendants Additional Time to Fully Comply with the Preliminary Injunction

Defendants argue the preliminary injunction will cause considerable harm to eight of their clients in the payroll and benefits administration. (ECF No. 89-1 at 12.) Because of the preliminary injunction, the clients must scramble to find alternative service providers. (*Id.*) The urgency of this transition will limit the clients' ability to negotiate a favorable contract with an alternative service provider. (*Id.*) If the clients have to end up with a less favorable contract, they may sue Lively for their additional expenses. (*Id.*) Moreover, the clients' employees may face disruptions in receiving wages and benefits during the transition process, and may, as a result, institute legal proceedings against their employers. (*Id.*) Defendants thereby conclude the public interest disfavors granting the preliminary injunction. (*Id.*) After considering these arguments, the Court decides to grant Defendants another four weeks to fully comply with the preliminary injunction.

In a motion for reconsideration, the court may not consider a new argument that could have been raised at the time of the original motion. *Jannarone v. Sunpower Corp.*, No. 18-9612, 2020 U.S. Dist. LEXIS 76380 at *7 (D.N.J. April 30, 2020); *Smart Vent Prods. v. Crawl Space Door Sys.*, 2017 U.S. Dist. LEXIS 44206 (D.N.J. March 27, 2017); *Denger v. Merret*, No. 2:08-cv-03454, 2011 U.S. Dist. LEXIS 132103 at *11 (D.N.J. Nov. 16, 2011). "[A] motion for reconsideration may not be used to re-litigate old matters or argue new matters that could have been raised before the original decision was reached." *In re Vehicle Carrier Servs. Antitrust Litig.*, No. 13-3306, 2016 U.S. Dist. LEXIS 55483 at *21 (D.N.J. April 25, 2016) (internal citations

omitted). The defendant "must bear the burden of its own omissions." *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 209 F. Supp. 2d 418, 420 (D.N.J. 2002).

Here, Defendants never discussed the preliminary injunction's potential effects on certain third parties until after the Court entered it. (*See* ECF Nos. 78, 81.) Therefore, Defendants are bringing up new arguments against issuing the preliminary injunction. However, the Court understands Defendants might not have raised these arguments before August 28, 2020. After all, Defendants' reference to an "urgency of the situation" for the client companies (ECF No. 89-1 at 12) is based on the five-day grace period in implementing the preliminary injunction as set forth in the August 28, 2020 Order (ECF No. 77 at 2). Defendants suggest the client companies may not be able to secure alternative service providers within such a short time. (ECF No. 89-1 at 12.) Defendants could not have predicted the length of this grace period before the Court actually issued the Order.

Considering the likely practical difficulties faced by the client companies, the Court decides to allow Defendants more time to fully comply with the preliminary injunction, so that the client companies can plan a logical and orderly transition. The Court notes, Globe Die Cutting, a client whose relationship with Defendants is to be withdrawn under paragraph 4 of the Preliminary Injunction Order (ECF No. 77 at 2), stated in a letter dated March, 15 2020 the transition would take four to six weeks, and "will create an unreasonable and unmanageable burden on Globe" (ECF No. 14 at 2). Because the Court already supported a preliminary injunction more than three months ago, the client companies should have been on the alert and preparing for a transition. Therefore, the Court grants Defendants another four weeks, which is at the lower end of the estimated length of the transition period, to fully comply with the August 28, 2020 Order.

IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion for Reconsideration (ECF No. 89) is

**DENIED.** An appropriate order follows.


**Date:** December 9, 2020                          /s/ Brian R. Martinotti
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**